## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E.C. and J.N., individually and<br>on behalf of E.N., a minor | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION - LAW |
| | : | |
| -  against - | : | JURY TRIAL DEMANDED |
| | : | |
| HANOVER AREA SCHOOL DISTRICT | : | No. |
| | : | |
| Defendant. | : | |

## **COMPLAINT**

Plaintiffs[1] E.C. and J.N., individually and on behalf of their minor child E.N.,

as parents and legal guardians, by and through their attorneys, Dyller & Solomon,

LLC, Barry H. Dyller, Esq., and Nicole M. Psaila, Esq., for their complaint allege as

follows:

## **INTRODUCTION**

This case involves Defendant Hanover Area School District, a public high

school district that, acting under color of state law, has exhibited a fundamental

misunderstanding of its constitutional duties. In expelling E.N., a tenth-grade

student, without providing prior notice or a meaningful opportunity to be heard,

---

[1] To protect the privacy of the minor child, the Plaintiffs and the child are
identified by their initials throughout this Complaint.

Hanover Area School District violated his right to due process protected by the Fourteenth Amendment to the United States Constitution.

Plaintiff E.N. was a high school student in the tenth grade in the academic year of 2024-2025. In January 2025, a fellow student, whose identity is still unknown, reported and accused E.N. of sexual misconduct that allegedly occurred off school grounds, outside of school hours, two years earlier in 2023. An investigation into the incident was subsequently undertaken by local law enforcement and the District Attorney's Office. To date, six months after his suspension/expulsion, no criminal or juvenile charges have been filed against E.N.

Plaintiffs, E.C., J.N., and E.N. were never advised of who reported the alleged misconduct. They were never informed of what the alleged misconduct consisted of. They were never presented with the opportunity to question any witness or challenge any allegations of misconduct. Hanover Area School District has not allowed E.N. to report to school in person since January 2025, forcing E.C. and J.N., parents of minor E.N., to involuntary consent to virtual schooling. Since January 24, 2025, E.N. has not been provided with an opportunity to be heard and was deprived of his Due Process right to notice and a hearing prior to his expulsion.

Months after the reported sexual misconduct allegation and being expelled from both Hanover Area School District and Wilkes-Barre Area Career and Technology Center, E.N. was advised that if he chooses to return to Wilkes-Barre

Area Career and Technology Center, he will be required to find his own transportation, as he is no longer allowed on the school bus. Additionally, he will be required to enter the facility through a side door and will be confined in a secluded classroom and only permitted to use an unfrequented locker room as a restroom.

Defendant Hanover Area School District, acting under color of state law, deprived E.N. of his reputational liberty and property interest in a public education without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. As a result, E.N. has been deprived of receiving an education, has been excluded from a vocational welding program at Wilkes-Barre Area Career and Technology Center, impairing E.N.'s ability to pursue future career opportunities, and has caused E.N. to suffer severe emotional distress. These events caused E.N. to experience anxiety, depression, social isolation, and psychological trauma, for which he has required and continues to require mental health support.

## <u>JURISDICTION AND VENUE</u>

1.    This action arises out of violations of federal law, 42 U.S.C. § 1983, state statutory law, including the Public School Code of 1949, 42 P.S. § 13-1318.1 as amended by Act 110, and state regulation 22 Pa. Code § 12.6.

2.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as the action arises under the Constitution and laws of the United States. The Court has supplemental jurisdiction over the state

law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy.

3.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

4.    Complainant E.N. was at all relevant times hereto, until he was unlawfully excluded from the school district, a student in Hanover Area School District and Wilkes-Barre Area Career and Technology Center, and a resident of Luzerne County.

5.    Plaintiffs E.C. and J.N. are the parents and natural guardians of E.N., residents of Luzerne County. They bring this action on behalf of their minor child and in their own right.

6.    Defendant Hanover Area School District (the "School District") is a public school district organized under the Commonwealth of Pennsylvania, including the Public School Code of 1949 (24 P.S. § 1-102). The School District is located in Luzerne County, Pennsylvania.

## **RELEVANT NON-PARTIES**

7.      Wilkes-Barre Area Career and Technology Center is a vocational technical institute, offering a "part-time cooperative career and technical education" as defined by Section 1801(12) of the Public School Code[2].

8.      John Sipper ("Sipper") is and at all relevant times hereto was, Hanover Area School District Principle, acting under color of state law.

9.      Nathan Barrett ("Barrett") was at all relevant times Hanover Area School District's Superintendent, acting under color of state law.

## **FACTUAL BACKGROUND**

E.N.'s Academic and Disciplinary Record

10.      In the academic year of 2024-2025, E.N. was a student in the tenth grade at Hanover Area High School.

11.      E.N. devoted significant time and effort to be on the Hanover Area High School Wrestling Team.

12.      Through his enrollment with the School District, E.N. also attended a part-time vocational-technical school, Wilkes-Barre Area Career and Technology Center, ("the Career Center") to gain early hands-on experience, as well as the specialized training and skills necessary for a welding career.

---

[2] 24 Pa. Stat. § 18-1801(12) (West 2024).

E.N. is Immediately Expelled from Hanover Area School District
As Well As Wilkes-Barre Career and Technology Center

13.    On January 24, 2025, by telephone, Sipper informed E.C. of allegations of sexual misconduct against E.N.

14.    On this day, Sipper reported to E.C. that E.N. would no longer be able to report to school in person in the School District due to Public School Code of 1949, 42 P.S. § 13-1318.1 as amended by Act 110.

15.    During this conversation, E.C. inquired if E.N. would still be able to attend the Career Center.

16.    Sipper then responded that the matter needed to be investigated further.

17.    Following their conversation, Sipper, via electronic communication, sent E.C. and J.N. a link to a Google Form to register E.N. for virtual schooling.

18.    On January 27, 2025, Sipper informed E.C. by electronic communication, that E.N. would no longer be able to attend the Career Center.

19.    On this same day, Sipper stated that E.N. could no longer attend the Career Center because the unidentified person who reported the alleged misconduct against a third party was also a student attending the Career Center.

20.    Sipper also stated that he hoped the situation would be investigated and resolved by Valentines Day, approximately two weeks later.

21.    On January 28, 2025, E.C. and J.N. registered E.N. for virtual school via the Google Form that was provided to them through electronic communication on January 24, 2025.

22.    On January 29, 2025, E.N. started attending school virtually through Hanover Area Virtual Academy.

23.    On January 31, 2025, E.C., on behalf of herself and J.N., attempted to contact Sipper via electronic communication to inquire about what procedure the School District was relying on to justify E.N.'s expulsion.

24.    In this electronic communication, E.C. explained to Sipper that Act 110 did not apply to E.N., as there was only a vague allegation of sexual misconduct. E.N., E.C, and J.N. were never provided with any specific facts, and E.N. was not convicted or adjudicated delinquent of any charges as required by Act 110 to apply.[3]

25.    On January 31, 2025, E.C., on behalf of herself and J.N., also inquired if the School District would compensate E.N. to attend Commonwealth Charter Academy, an accredited public cyber school.

26.    On February 5, 2025, E.C. and J.N. still did not receive a response to their inquiries and forwarded their previous questions and statements via electronic communication to Sipper.

---

[3] Act 110, codified at 24 P.S. § 13-1318.1, only applies to students who were **convicted** of a crime, or **adjudicated delinquent** of such a crime.

27.     On February 7, 2025, Sipper replied to E.C.'s and J.N.'s repeated inquiries and informed them that he would have the information for them on February 10, 2025.

28.     On February 11, 2025, Sipper contacted E.C. and J.N. and again forwarded Public School Code of 1949, 42 P.S. § 13-1318.1 as amended by Act 110, explaining that it is the School District's policy to protect all parties involved.

29.     On this same day, E.C., on behalf of herself and J.N., requested an in-person meeting with Sipper to discuss the expulsion.

30.     The in-person meeting was scheduled to be held on February 19, 2025.

31.     On February 13, 2025, Superintendent Barrett contacted E.C. and J.N. to ask if they would be available for a telephone conference on February 14, 2025.

32.     On February 13, 2025, E.C. and J.N. confirmed that they will be available.

33.     On February 14, 2025, Barrett never called.

34.     On February 19, 2025, an in-person meeting was held with E.C., J.N., E.N., E.C.'s sister, Sipper, Barrett, and Barrett's assistant.

35.     At this meeting, Sipper informed E.N., E.C. and J.N., that police were still investigating, and that E.N. is indefinitely expelled from attending the School District, as well as the Career Center in person.

36.     At this meeting, Barrett informed E.N., E.C. and J.N. that he would contact the District Attorney's Office for more information due to E.N. missing valuable hands-on experience and training in welding at the Career Center.

37.     On February 21, 2025, E.C. and J.N. contacted Barrett to request an update regarding the investigation allegedly being conducted by the District Attorney's Office. However, Barrett did not have an update.

38.     On February 27, 2025, Barrett contacted E.C. and J.N. and informed them that the School District provided ample time for law enforcement to conduct an investigation into the allegations, and therefore the School District would implement a safe return plan for E.N. to return to school at the School District, as well as the Career Center.

39.     Later that same day, however, Barrett again contacted E.C. and J.N. Barrett informed them there was still an active investigation into the allegations against E.N. Barrett stated that E.N.'s expulsion would remain in effect for both the School District and the Career Center.

40.     To date, after six months of being expelled from school, E.N. still has not been provided notice of the alleged misconduct, nor an opportunity to be heard at a formal hearing regarding his five-month, ongoing expulsion from the Hanover Area School District.

41.    The 2025-2026 school year is approaching. E.N. remains expelled with no notice of any accusations, and no process in place to determine if he engaged in conduct warranting expulsion.

Hanover Area School District Instructs Expulsion
from Wilkes-Barre Area Career and Technology Center

42.    On January 24, 2025, Hanover Area School District informed E.C. and J.N. that E.N. would no longer be able to report to the Career Center due to Public School Code of 1949, 42 P.S. § 13-1318.1 as amended by Act 110.

43.    On February 19, 2025, an in-person meeting was held with E.C., J.N., E.N., E.C.'s sister, Sipper, Barrett, and Barrett's assistant. Without the benefit of notice sufficient to satisfy the due process requirements of the Fourteenth Amendment, nor a hearing sufficient to satisfy due process, they told E.N. that he was indefinitely expelled from the Career Center.

44.    On February 21, 2025, E.C. and J.N. received an electronic communication from Nadeen, an employee of the Career Center, inquiring if E.N. was doing well and asked E.C. and J.N. if they were aware of a return date for E.N.

45.    In this electronic communication, Nadeen stated that E.N. was missing valuable training and hours, that she hoped E.N. would return soon, as he really seemed to enjoy learning the skills to become a welder.

10

46.    On that same day, E.C. contacted Barrett to clarify what information has been communicated to the Career Center, as they had not been informed of the expulsion or the underlying allegations.

47.    On February 25, 2025, E.C. scheduled a telephone conference with Ken Valaitis, the welding teacher at the Career Center to discuss the wrongful expulsion.

48.    On February 26, 2025, a telephone conference was held between E.C., Ken Valaitis, the welding teacher at the Career Center, and his teaching assistant Nadeen.

49.    During this telephone conference, the Career Center relayed that it was unaware of any allegations or the expulsion of E.N. from the vocational technical school.

50.    On March 7, 2025, Sipper notified E.C. and J.N. that E.N. would be permitted to return to the Career Center only on the condition that he find his own transportation, enter through a secluded side door into the building, confine himself to the welding area, and only be permitted to use an unfrequented locker room as a restroom if necessary.

51.    In other words, the School District's conditions for E.N. to return to the Career Center (but still not to the school), were that one of his parents would need to stop working so that they could drive him to and from the Career Center, and that

he be treated like a pariah limited to a separate side door entrance and separate restroom.

52.     On that same day, E.C. and J.N. informed Sipper that they disagreed with the proposed plan for E.N.'s return to the Career Center, as he was being treated unfairly.

53.     On or around May 19, 2025, J.N. had a telephone conversation with Frank Majikes, the Principal of the Career Center regarding E.C.'s grades as a virtual student.

54.     During this conversation, Mr. Majikes inquired as to why E.N. had not returned to the Career Center.

55.     J.N. informed Mr. Majikes of the School District's proposed plan for E.N.'s return.

56.     Mr. Majikes informed J.N. that he was unaware the School District would not provide E.N. transportation to return back to the Career Center.

57.     During this conversation, Mr. Majikes informed J.N. that E.N. needs to be enrolled in school next year in order for him to return and not lose his placement at the Career Center.

<u>Cyber School</u>

58.    As a result of the expulsion, E.N. was removed from the traditional public school and was placed in a virtual school setting on January 29, 2025, to complete from home with little or no instruction, and with no social interaction.

59.    E.N. was required to complete two out of four quarters of his tenth-grade year virtually.

60.    E.N. struggled to adapt to the virtual learning environment, which lacked structure, support and resources that he would have had if he were permitted to attend in person.

61.    E.N.'s academic performance declined in the third and fourth quarters when he was required to complete his schooling from home.

62.    The cyber school placement isolated E.N. and hindered his educational process, placing him at a clear disadvantage compared to his classmates.

63.    E.N.'s removal from the Career Center deprived him of valuable educational opportunities and disrupted his path toward acquiring industry specific skills and certifications necessary to become a welder upon graduation.

## **<u>LEGAL STANDARD</u>**

64.    To obtain a preliminary injunction, a plaintiff must show (1) a substantial likelihood of success on the merits; (2) irreparable injury to the moving

party if relief is not granted; (3) that a balance of equities favors the movant's request for injunctive relief; and (4) that a preliminary injunction is in the public interest."[4]

## **REQUEST FOR PRELIMINARY INJUNCTION**

Plaintiffs Are Likely To Succeed On The Merits

65.     E.N. is indefinitely expelled from Hanover Area School District due to unspecified allegations of sexual misconduct. E.N. was never charged with such a crime, convicted of any such crime, or been adjudicated delinquent of any such crime.

66.     E.N. has not been afforded due process, including notice of his alleged wrongdoing and a hearing prior to his expulsion by Hanover Area School District.

Plaintiffs Will Suffer Irreparable Harm Without The Court's Intervention

67.     E.N. faces imminent and continuing harm as a result of the School District's decision to expel him from its school and from the Career Center without providing proper formal notice of his alleged wrong doing, or a formal hearing, in violation of his Due Process rights.

---

[4] *Benisek v. Lamone*, 585 U.S. 155, 138 S. Ct. 1942 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)).

68.    E.N.'s expulsion from Hanover Area High School and Wilkes-Barre Area Career and Technology Center remains indefinite for the upcoming academic year of 2025-2026.

69.    E.N.'s expulsion from Hanover Area School District and Wilkes-Barre Area Career and Technology Center will negatively impact his academic record, his college admission, and future employment opportunities.

70.    The harm is irreparable and cannot be adequately remedied through monetary damages alone, and the ongoing denial of educational access and fundamental fairness constitutes a continuing violation of his constitutional rights, further supporting the need for a preliminary injunction.

The Balance of Equities Weighs Strongly In Plaintiffs' Favor

71.    The harm to E.N. outweighs any harm Defendant Hanover Area School District and Wilkes-Barre Area Career and Technology Center will endure if E.N. is permitted to return in full capacity.

72.    A student may be expelled following a conviction or adjudication of delinquency for a qualifying sexual offense. E.N. has been facing expulsion since January 2025 based solely on an unverified allegation by an unidentified student, claiming E.N. sexually assaulted a third party two years earlier. There have been no formal charges, conviction or adjudication of delinquency, or due process.

73.    Ensuring a student's constitutional rights are protected imposes a minimal burden on the school, compared to the harm E.N. has endured and will continue to endure without an injunction to restore his right to attend school.

The Public's Interest

74.    Education serves a critical function in a student's development and well-being.

75.    The public has a strong interest in ensuring that disciplinary actions are carried out in a fair and lawful manner.

76.    For a student to be expelled without being informed of what he allegedly did wrong, and provided the opportunity to have a formal hearing raises serious due process concerns, but also undermines public confidence in the fairness and accountability of the educational system.

77.    Further, the negative long-term impact of depriving E.N. of his education and vocational training will have a negative impact on the public, including diminishing E.N.'s ability to work and be a productive citizen.

<u>COUNT ONE</u>
(Plaintiffs v. Hanover Area School District)
Violation of Procedural Due Process Rights
42 U.S.C. § 1983

78.     Plaintiffs repeat and reallege each of the above allegations as if fully

repeated herein.

79.     The expulsion of a public-school student, resulting in a complete

exclusion from a traditional school setting for more than ten (10) days, requires that

the student be provided with notice and an opportunity for a hearing[5], in accordance

with due process requirements, as recognized under the Fourteenth Amendment to

the United States Constitution.

80.     Students enrolled in public schools are guaranteed certain procedural

safeguards when facing disciplinary action such as expulsion, to protect their

property interest in access to a public education.[6]

81.     Under Pennsylvania law, students possess a recognized and legally

protected interest in receiving a public education.

82.     Defendant Hanover Area School District, acting under color or state

law, deprived E.N. of these protected interests by removing him from school and

_____

[5]22 Pa. Code § 12.6(b)(2).

[6] See *Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729 (1975) (recognizing that students
have both property and liberty interests at stake in school disciplinary
proceedings)).

excluding him from Wilkes-Barre Area Career and Technical Center without providing adequate notice of charges against him or affording him a hearing at which he could reasonably respond to such allegations.

83.    As a direct result of Defendant Hanover Area School District's actions, E.N. suffered educational harm, reputational damage, and emotional distress which will impact his life and his career.

### COUNT TWO
(Plaintiffs v. Hanover Area School District)
Violation of Pennsylvania Public School Code
42 P.S. § 13-1318.1 as Amended by Act 110

84.    Plaintiffs repeat and reallege each of the above allegations as if fully repeated herein.

85.    Defendant Hanover Area School District invoked Section 13-1318.1 of the Pennsylvania Public School Code ("Act 110") to justify the alternate educational placement of E.N., asserting that the provision prohibits a student who has been convicted or adjudicated delinquent of sexual assault from attending the same public school as the victim.

86.    However, Act 110 does not authorize such exclusion based merely on an investigation or pending charges. The statute explicitly applies only where a student has been either convicted in a criminal proceeding or adjudicated delinquent in a juvenile proceeding for an act of sexual violence.

87.    Defendant Hanover Area School District justified and continues to justify the exclusion of E.N. from the School District on the grounds of protecting an unidentified witness who reported the alleged misconduct against a third party.

88.    Defendant Hanover Area School District's reliance on Act 110 as a basis for the exclusion and expulsion of E.N. was improper and unlawful.

89.    As a direct result of Defendant Hanover Area School District's misapplication of Act 110, E.N. suffered educational harm, reputational damage, emotional distress and will impact later opportunities for higher education and/or employment.

<u>COUNT THREE</u>
(Plaintiffs v. Hanover Area School District)
Violation of Pennsylvania Student Rights Regulation
22 Pa. Code § 12.6

90.    Plaintiffs repeat and reallege each of the above allegations as if fully repeated herein.

91.    Students are entitled to procedural protections, including written formal notice of charges and the opportunity to respond within a formal hearing prior to being excluded from school.

92.    Expulsions exceeding ten (10) school days require a prior formal hearing.

93.    A formal hearing[7] must be held within fifteen (15) school days of the notification of the charges.

94.    The hearing may be conducted by the governing board, a designated committee of the board, or a qualified hearing examiner appointed by the board. However, if the hearing is conducted by a committee or hearing examiner, expulsion may only be imposed upon a majority vote of the full governing board[8].

95.    Defendant Hanover Area School District removed E.N. from his educational placement and imposed alternate arrangements such as cyber schooling without affording him these procedural rights.

96.    E.N.'s expulsion occurred without formal charges ever being filed.

97.    E.N.'s expulsion occurred without adequate notice, without a formal hearing, and without an opportunity to present evidence or challenge the allegations against him.

98.    E.N. was not afforded the right to be presented with the names of witnesses against him or copies of the statements of those witnesses.

99.    As a direct result of Defendant Hanover Area School District's actions, E.N. suffered educational harm, reputational damage, emotional distress and impact to his career.

---

[7] 22 Pa. Code § 12.8.
[8] *Id.*

<u>COUNT FOUR</u>
(Plaintiffs v. Hanover Area School District)
Violation of Career and Technical Education Access Rights
22 Pa. Code § 339.22

100.    Plaintiffs repeat and reallege each of the above allegations as if fully repeated herein.

101.    All students are entitled to equal access to vocational-technical education programs, in accordance with district policies and procedures adopted by the local board of school directors.

102.    E.N. was enrolled in Wilkes-Barre Area Career and Technical Center to obtain a welding certificate of completion, indicating how many hours were completed in the program.

103.    Due to Hanover Area School District expelling E.N. from attending Wilkes-Barre Area Career and Technical Center, E.N. is currently deficient by approximately half a year's worth of required instructional hours necessary to obtain his welding certification, which will likely render him ineligible for employment in the welding field upon graduation.

104.    Defendant Hanover Area School District removed E.N. from the vocational program without following applicable written policies or procedures, and without providing any meaningful opportunity for E.N. to contest his removal.

105.    E.N.'s removal from Wilkes-Barre Area Career and Technical Center was based on unsubstantiated allegations and occurred without a conviction, adjudication of delinquency, or any finding of wrongdoing.

106.    As a direct result of Defendant Hanover Area School District's actions, E.N. was denied equal access to career and technical education, suffered educational harm, reputational damage, emotional distress, and will impact his likelihood of receiving a higher education or future career opportunities.

WHEREFORE, Plaintiffs demand judgment as follows:

A.    A Preliminary Injunction prohibiting Defendant Hanover Area School District from enforcing the exclusion of E.N. from Hanover Area School District and requiring reinstatement as a student without disciplinary or academic restrictions;

B.    A Preliminary Injunction prohibiting Defendant Hanover Area School District from enforcing the exclusion of E.N. from Wilkes-Barre Area Career and Technical Center and requiring reinstatement as a student without disciplinary or academic restrictions;

C.    A Permanent Injunction directing Defendant Hanover Area School District to reinstate E.N. to his educational placement in Hanover Area School District, and to expunge any disciplinary record related to the improper expulsion upon resolution of the case on the merits;

D.      A Permanent Injunction directing Defendant Hanover Area School District to reinstate E.N. to his vocational placement in Wilkes-Barre Career and Technical Center, and to expunge any disciplinary record related to the improper expulsion upon resolution of the case on the merits;

E.      Declare that Defendant Hanover Area School District's actions violated E.N.'s rights under the United States Constitution, the Pennsylvania Public School Code, and the Pennsylvania Code;

F.      For Counts One through Four, an amount to be determined at trial for educational disruption, lost instructional time, emotional distress, reputational harm, loss of higher education opportunities, and loss of vocational training and future earning capacity;

G.      For attorneys' fees pursuant to 42 U.S.C. § 1988; and

H.      Such other relief as the Court may deem just and proper.

Respectfully submitted,

DYLLER & SOLOMON, LLC
/s/ Barry H. Dyller, Esq.
Bar ID: 65084
/s/ Nicole M. Psaila, Esq.
Bar ID: 337070
88 North Franklin Street
Wilkes-Barre, PA 18701
P: 570-829-4860
F: 570-825-6675

Jury Demand

Plaintiffs demand a trial by jury on all issues triable to a jury.