**Attorneys for Plaintiffs**
Barry H. Dyller, Esq.
Nicole M. Psaila, Esq.
DYLLER & SOLOMON, LLC
88 North Franklin Street
Wilkes-Barre, PA 18701
P: 570-829-4860
F: 570-825-6675

**Attorneys for Defendant**
Sean P. McDonough, Esq.
Dougherty, Leventhal & Price, LLP
459 Wyoming Avenue
Kingston, PA 18704
Phone 570-288-1427
Fax:   570-288-0799
smcdonough@dlplaw.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E.C. and J.N., individually and on behalf of E.N., a minor | : | CIVIL NO. 3: 25-cv-1309 |
| | : | |
| Plaintiffs, | : | |
| | : | (JUDGE MEHALCHICK) |
| vs. | : | |
| | : | |
| HANOVER AREA SCHOOL DISTRICT | : | |
| | : | |
| Defendant. | : | |

**JOINT CASE MANAGEMENT PLAN**

Instructions:   In many cases there will be more parties in the action than there are spaces provided in this form.   Each party shall provide all requested information.   If the space on this form is not sufficient, the form should be retyped or additional pages attached.

No party may submit a separate Case Management Plan.   Disagreements among parties with respect to any of the matters below shall be set forth in the appropriate section.

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

1.  **Principal Issues**

   1.1    <u>Separately for each party, please give a statement summarizing this case:</u>

   <u>By plaintiff(s):</u>

Plaintiff E.N. was a high school student in the tenth grade in the academic year of 2024-2025. In January 2025, a fellow student, whose identity is still unknown, reported and accused E.N. of sexual misconduct that allegedly occurred off school grounds, outside of school hours, two years earlier in 2023. An investigation into the incident was subsequently undertaken by local law enforcement and the District Attorney's Office. To date, no criminal or juvenile charges have been filed against E.N.

Plaintiffs, E.C., J.N., and E.N. were never advised of who reported the alleged misconduct. They were never informed of what the alleged misconduct consisted of. They were never presented with the opportunity to question any witness or challenge any allegations of misconduct.

Hanover Area School District did not allow E.N. to report to school in person between January 2025 and August 2025. E.N. was forced to complete schooling virtually for the third and fourth quarters of his tenth-grade year. In lieu of attending a preliminary injunction hearing on August 7, 2025, Hanover Area School District agreed to enroll E.N. back into school without restrictions for the current academic year of 2025-2026, starting on September 5, 2025.

Since January 24, 2025, E.N. has not been provided with an opportunity to be heard and was deprived of his Due Process right to notice and a hearing prior to his expulsion. Months after the reported sexual misconduct allegation and being expelled from both Hanover Area School District and Wilkes-Barre Area Career and Technology Center, E.N. was advised that if he chooses to return to Wilkes-Barre Area Career and Technology Center, he would be required to find his own

transportation, as he was no longer allowed on the school bus. Additionally, he was advised he would be required to enter the facility through a side door, would be confined in a secluded classroom and would only be permitted to use an unfrequented locker room as a restroom. E.N. missed two quarters of valuable hands-on experience. E.N. has since been re-enrolled at Wilkes Barre Area Career and Technology Center for the 2025-2026 academic year. Defendant Hanover Area School District, acting under color of state law, deprived E.N. of his reputational liberty and property interest in a public education without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

As a result, E.N. was deprived of receiving a public education, was excluded from a vocational welding program at Wilkes-Barre Area Career and Technology Center impairing his ability to pursue future career opportunities and has caused E.N. to suffer severe ongoing emotional distress. These events caused E.N. to experience anxiety, depression, social isolation, and psychological trauma, for which he has required and continues to require mental health support. E.N. incurred monetary expenses due to this exclusion.

By defendant(s):

On January 24, 2025, the Defendant was notified by the Hanover Police Department of an alleged sexual assault perpetrated by E.N. against a fellow female student in the District.   On the same day, the District's principal John Sipper had a telephone conversation with E.N. and E.N.'s parents, informed them of the allegations against E.N. and afforded them an opportunity to respond to those allegations. On that same day, in an effort to assess reports received from law enforcement, address   a potential eminent threat and to make a timely assessment of student behavior which may indicate a threat to the safety of other students, the District developed a

safety plan to protect the interests of both E.N. and the alleged victim of E.N.'s alleged sexual assault.   As part of the safety plan, not discipline or punishment, E.N. and his parents were notified that the District would provide alternative public education through cyber school as well as continued vocational curriculum at Wilkes-Barre Area Career and Technical Center pending a more fulsome investigation.

At this time, because the criminal matter apparently has been abandoned by law enforcement and the alleged victim, the minor plaintiff E.N. has been fully reinstated to all school activities without any restrictions.

#### 1.2    The facts the parties dispute are as follows:

1.   On January 24, 2024, Principle Sipper reported to E.C. that E.N. would no longer be able to report to school in person in the School District due to Public School Code of 1949, 42 P.S. § 13-1318.1 as amended by Act 110. Compare Complaint ¶ 14 with Answer ¶ 14.

2.   In an electronic communication on January 31, 2025, E.C. contacted Sipper via e-mail correspondence, stating that Act 110 did not apply to E.N., as there was only a vague allegation of sexual misconduct. E.C. also stated E.N., EC, and J.N. were never provided with any specific facts, and E.N. was not convicted or adjudicated delinquent of any charges as required by Act 110 to apply. Compare Complaint ¶ 23-24 with Answer ¶ 24.

3.   On February 13, 2025, E.C. and J.N. confirmed that they will be available for a telephone conference on February 14, 2025. Compare Complaint ¶ 31-32 with Answer ¶ 32.

4.   On February 19, 2025, during an in-person meeting, Sipper informed E.N., E.C. and J.N., that E.N. is indefinitely expelled from attending the School District, as well as the Career Center in person. Compare Complaint ¶ 34-35 with Answer ¶ 35.

5.  On February 27, 2025, after informing the family Hanover Area School District would implement a safe return plan for E.N. to return back to school in-person, as well as Wilkes Barre Area Career and Technology Center, Barrett again contacted E.C. and J.N. Barrett informed them there was still an active investigation into the allegations against E.N. Barrett stated that E.N.'s expulsion would remain in effect for both the School District and the Career Center. Compare Complaint ¶ 38-39 with Answer ¶ 39.

6.  E.N. was expelled from Hanover Area School District. Compare Complaint ¶ 40 with Answer ¶ 40.

7.  On February 21, 2025, E.C. and J.N. received an electronic communication from Nadeen, an employee of the Career Center, inquiring if E.N. was doing well and asked E.C. and J.N. if they were aware of a return date for E.N. Compare Complaint ¶ 44 with Answer ¶ 44.

8.  On February 21, 2025, In the same electronic communication, Nadeen stated that E.N. was missing valuable training and hours, that she hoped E.N. would return soon, as he really seemed to enjoy learning the skills to become a welder. Compare Complaint ¶ 45 with Answer ¶ 45.

9.  On February 25, 2025, E.C. scheduled a telephone conference with Ken Valaitis, the welding teacher at the Career Center to discuss the wrongful expulsion. Compare Complaint ¶ 47 with Answer ¶ 47-49.

10. On February 26, 2025, a telephone conference was held between E.C., Ken Valaitis, the welding teacher at the Career Center, and his teaching assistant Nadeen. Compare Complaint ¶ 48 with Answer ¶ 47-49.

11. During this telephone conference, the Career Center relayed that it was unaware of any

allegations or the expulsion of E.N. from the vocational technical school. Compare Complaint ¶ 49 with Answer ¶ 47-49.

12. On March 7, 2025, Sipper notified E.C. and J.N. that E.N. would be permitted to return to the Career Center only on the condition that he find his own transportation, enter through a secluded side door into the building, confine himself to the welding area, and only be permitted to use an unfrequented locker room as a restroom if necessary. Compare Complaint ¶ 50 with Answer ¶ 50.

13. On or around May 19, 2025, J.N. had a telephone conversation with Frank Majikes, the Principal of the Career Center regarding E.C.'s grades as a virtual student. During this conversation, Mr. Majikes inquired as to why E.N. had not returned to the Career Center. J.N. informed Mr. Majikes of the School District's proposed plan for E.N.'s return. Compare Complaint ¶ 53 with Answer ¶ 53.

14. E.N. struggled to adapt to the virtual learning environment, which lacked structure, support and resources that he would have had if he were permitted to attend in person. Compare Complaint ¶ 60 with Answer ¶ 60.

15. E.N.'s academic performance declined in the third and fourth quarters when he was required to complete his schooling from home. Compare Complaint ¶ 61 with Answer ¶ 61.

16. The cyber school placement isolated E.N. and hindered his educational process, placing him at a clear disadvantage compared to his classmates. Compare Complaint ¶ 62 with Answer ¶ 62.

17. E.N.'s removal from the Career Center deprived him of valuable educational opportunities and disrupted his path toward acquiring industry specific skills and certifications

necessary to become a welder upon graduation. Compare Complaint ¶ 63 with Answer ¶ 63.

<u>Agree upon are as follows:</u>

1.    In the academic year of 2024-2025, E.N. was a student in the tenth grade at Hanover Area High School. Compare Complaint ¶ 10 with Answer ¶ 10.

2.    E.N. devoted significant time and effort to be on the Hanover Area High School Wrestling Team. Compare Complaint ¶ 11 with Answer ¶ 11.

3.    On January 24, 2025, by telephone, Sipper informed E.C. of allegations of sexual misconduct against E.N. Compare Complaint ¶ 13 with Answer ¶ 13.

4.    On January 24, 2025, E.C. inquired by telephone if E.N. would still be able to attend the Career Center. Compare Complaint ¶ 15 with Answer ¶ 15.

5.    On January 24, 2025, by telephone Sipper then responded that the matter needed to be investigated further. Compare Complaint ¶ 16 with Answer ¶ 16.

6.    Following their conversation on January 24, 2025, Sipper, via electronic communication, sent E.C. and J.N. a link to a Google Form to register E.N. for virtual schooling. Compare Complaint ¶ 17 with Answer ¶ 17.

7.    On January 27, 2025, Sipper informed E.C. by electronic communication, that E.N. would no longer be able to attend the Career Center because the unidentified person who reported the alleged misconduct against a third party was also a student attending the Career Center. Compare Complaint ¶ 18-19 with Answer ¶ 18-19.

8.    In this same communication, Sipper also stated that he hoped the situation would be investigated and resolved by Valentines Day, approximately two weeks later. Compare Complaint ¶ 20 with Answer ¶ 20.

9. On January 28, 2025, E.C. and J.N. registered E.N. for virtual school via the Google Form that was provided to them through electronic communication on January 24, 2025. Compare Complaint ¶ 21 with Answer ¶ 21.

10. On January 29, 2025, E.N. started attending school virtually through Hanover Area Virtual Academy. Compare Complaint ¶ 22 with Answer ¶ 22.

11. On January 31, 2025, E.C., on behalf of herself and J.N., attempted to contact Sipper via electronic communication to inquire about what procedure the School District was relying on to justify E.N.'s expulsion. Compare Complaint ¶ 23 with Answer ¶ 23.

12. On January 31, 2025, E.C., on behalf of herself and J.N., also inquired if the School District would compensate E.N. to attend Commonwealth Charter Academy, an accredited public cyber school. Compare Complaint ¶ 25 with Answer ¶ 25.

13. On February 5, 2025, E.C. and J.N. still did not receive a response to their inquiries and forwarded their previous questions and statements via electronic communication to Sipper. Compare Complaint ¶ 26 with Answer ¶ 26.

14. On February 7, 2025, Sipper replied to E.C.'s and J.N.'s repeated inquiries and informed them that he would have the information for them on February 10, 2025. Compare Complaint ¶ 27 with Answer ¶ 27.

15. On February 11, 2025, Sipper contacted E.C. and J.N. and again forwarded Public School Code of 1949, 42 P.S. § 13-1318.1 as amended by Act 110, explaining that it is the School District's policy to protect all parties involved. Compare Complaint ¶ 28 with Answer ¶ 28.

16. On February 11, 2025, E.C., on behalf of herself and J.N., requested an in-person meeting with Sipper to discuss the expulsion. Compare Complaint ¶ 29 with Answer ¶ 29.

17. An in-person meeting was scheduled to be held on February 19, 2025. Compare Complaint ¶ 30 with Answer ¶ 30.

18. On February 13, 2025, Superintendent Barrett contacted E.C. and J.N. to ask if they would be available for a telephone conference on February 14, 2025. Compare Complaint ¶ 31 with Answer ¶ 31.

19. On February 14, 2025, Barrett never called J.N or E.C. Compare Complaint ¶ 33 with Answer ¶ 33.

20. On February 19, 2025, an in-person meeting was held with E.C., J.N., E.N., E.C.'s sister, Sipper, Barrett, and Barrett's assistant. Compare Complaint ¶ 34 with Answer ¶ 34.

21. On February 19, 2025, at the in-person meeting, Sipper informed E.C., J.N., and E.N. that police were still investigating the allegations made against E.N. Compare Complaint ¶ 35 with Answer ¶ 35.

22. On February 19, 2025, at the in-person meeting, Barrett informed E.N., E.C. and J.N. that he would contact the District Attorney's Office for more information due to E.N. missing valuable hands-on experience and training in welding at the Career Center. Compare Complaint ¶ 36 with Answer ¶ 36.

23. On February 21, 2025, E.C. and J.N. contacted Barrett to request an update regarding the investigation allegedly being conducted by the District Attorney's Office. However, Barrett did not have an update. Compare Complaint ¶ 37 with Answer ¶ 37.

24. On February 27, 2025, Barrett contacted E.C. and J.N. and informed them that the School District provided ample time for law enforcement to conduct an investigation into the allegations, and therefore the School District would implement a safe return plan for E.N. to

return to school at the School District, as well as the Career Center. Compare Complaint ¶ 38 with Answer ¶ 38.

25. On January 24, 2025, Hanover Area School District informed E.C. and J.N. that E.N. would no longer be able to report to the Career Center due to Public School Code of 1949, 42 P.S. § 13-1318.1 as amended by Act 110. Compare Complaint ¶ 42 with Answer ¶ 42.

26. On March 7, 2025, Sipper notified E.C. and J.N. that E.N. would be permitted to return to the Career Center with restrictions. Compare Complaint ¶ 50 with Answer ¶ 50.

27. On March 7, 2025, E.C. and J.N. informed Sipper that they disagreed with the proposed plan for E.N.'s return to the Career Center, as he was being treated unfairly. Compare Complaint ¶ 52 with Answer ¶ 52.

28. E.N. was required to complete two out of four quarters of his tenth-grade year virtually. Compare Complaint ¶ 59 with Answer ¶ 59.

29. E.N. has since been fully restored in the classroom at Hanover Area School District as well as Wilkes Barre Area Career and Technology Center.

   1.3    The legal issues the parties dispute are as follows:

1. Whether parents, E.C. and J.N., of their minor child, E.N., may bring a cause of action in their own right. Compare Complaint ¶ 5 with Answer ¶ 5.

2. Whether the expulsion of a public-school student, resulting in a complete exclusion from a traditional school setting for more than ten (10) days, requires that the student be provided with notice and an opportunity for a hearing, in accordance with due process requirements, as recognized under the Fourteenth Amendment to the United States Constitution.

3. Whether Hanover Area School District's removal of E.N. from in-person schooling and placement in cyber school constituted a violation of E.N.'s constitutional due process rights, as recognized under the Fourteenth Amendment.

4. Whether Hanover Area School District's removal of E.N. from his regular education setting in public school under Section 13-1318.1 of the Pennsylvania Public School Code ("Act 110"), was just and proper when he was not charged, convicted, or adjudicated delinquent of sexual assault.

5. Whether the removal of E.N. from his public education placement and forcing him to attend cyber school without affording him procedural protections, including written formal notice of charges and the opportunity to respond within a formal hearing prior to being excluded from school are just and proper under Pennsylvania law.

6. Whether removal of E.N. from the vocational program at Wilkes Barre Area Career and Technology Center, without following applicable written policies or procedures, and without providing any meaningful opportunity for E.N. to contest his removal, was a violation of a student's entitlement to equal access to vocational-technical education programs.

7. Whether forcing a student to attend school virtually is an appropriate alternative public education, when no criminal charges were filed after an extensive investigation by the local police department and the District Attorney's Office.

8. Whether a student has a protected liberty interest in freedom from unwarranted exclusion from a public education.

 Agree upon are as follows:

1. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C.

11

§§ 1331 and 1343, as the action arises under the Constitution and laws of the United States. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy.

2.   Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

3.   Plaintiffs E.C. and J.N. are the parents and natural guardians of E.N.

4.   Defendant Hanover Area School District (the "School District") is a public school district organized under the Commonwealth of Pennsylvania, including the Public School Code of 1949 (24 P.S. § 1-102). The School District is located in Luzerne County, Pennsylvania.

5.   Wilkes-Barre Area Career and Technology Center is a vocational technical institute, offering a "part-time cooperative career and technical education" as defined by Section 1801(12) of the Public School Code.

6.   John Sipper ("Sipper") is and at all relevant times hereto was, Hanover Area School District Principle, acting under color of state law.

7.   Nathan Barrett ("Barrett") was at all relevant times Hanover Area School District's Superintendent, acting under color of state law.

     1.4     Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

       None.

     1.5     Identify any named parties that have not yet been served:

       None.

<u>1.6</u> <u>Identify any additional parties that:</u>

  plaintiff(s) intends to join:

  None.

  defendant(s) intends to join:

      1.7     Identify any additional claims that:

          plaintiff(s) intends to add:

          None at this time.

          defendant(s) intends to add:

**2.0    Disclosures**

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

Plaintiff's counsel certify that the required initial disclosures under Federal Rule of Civil Procedure 26(a)(1) have been made.

      2.1    Separately for each party, list by name and title/position each person whose identity has been disclosed.

          Disclosed by Plaintiffs:

| Name | Title/Position |
|------|----------------|
| E.N. | Student; Minor |
| E.C. | Parent of E.N. |
| J.N. | Parent of E.N. |
| John Sipper | Hanover Area School District Principal |
| Nathan Barrett | Hanover Area School District Superintendent |
| Frank Majikes | Wilkes Barre Area Career and Technology Principle |
| Ken Valantis | Wilkes Barre Area Career and Technology Welding Teacher |

| | |
|---|---|
| Nadeen Federici | Wilkes Barre Area Career and Technology Welding Teacher Associate |
| A.C.[1] | E.C. Sister |
| Lynn Vitale | Hanover Area School District Secretary |
| Joe Mcglynn | Ashley Borough Police Department |
| Luzerne County District Attorney's Office | |

Disclosed by Defendant:

| Name | Title/Position |
|---|---|
| John Sipper | Principal |
| Nathan Barrett | |

    All individuals identified by the Plaintiffs.   Representatives of the Hanover Police Department.

    Any persons listed in Plaintiff's Complaint, the Defendants' Answer, Plaintiff's Initial Disclosures, and/or any person with knowledge of documents which may be provided in discovery.

## 3.0    Early Motions

Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:

| Nature of Motion | Moving Party | Anticipated Filing Date |
|---|---|---|

Motion for Summary Judgment to be filed by Plaintiff following the completion of discovery.

## 4.0    Discovery

---

1 A.C.'s full name will be provided in discovery to Defense counsel.

4.1    Briefly describe any discovery that has been completed or is in progress:

By plaintiff(s):

On September 9, 2025, Plaintiffs served their First Request for the Production of Documents and Plaintiff's First Set of Interrogatories on the Defendant. On Oct 19, 2025, Plaintiffs served their Initial Disclosures.

By defendant(s):

The Defendants are in the process of responding to the discovery requests of the plaintiff and propounding written discovery.

4.2    Describe any discovery that all parties agree should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

The parties agree to engage in written discovery and depositions for, among other things, to explore the viability of the claims and defenses advanced in this litigation.

4.3    Describe any discovery that one or more parties want(s) to conduct but to which another party objects, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

None.

4.4    Identify any subject area limitations on discovery that one or more parties would like imposed, at the first stage of or throughout the litigation:

None.

4.5    For each of the following discovery tools, recommend the per-party or per-side limitation (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):

4.5.1  depositions (excluding experts) to be taken by:

plaintiff(s):____10____        defendant(s):__10____

4.5.2  interrogatories to be served by:

plaintiff(s):____25____        defendant(s):__25____

4.5.3  document production requests to be served by:

plaintiff(s):__No Limits____        defendant(s): no limits_____

NO LIMITS, AS PER THE FEDERAL RULES OF CIVIL PROCEDURE.

4.5.4  requests for admission to be served by:

plaintiff(s):__25_____        defendant(s):__25_____

4.6  Discovery of Electronically Stored Information

_X_ Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

____ Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

**5.0    Protective Order**

5.1    If entry of a protective order is sought, attach to this statement a copy of the proposed order.   Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

5.2    If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

**6.0    Scheduling**

6.1    Final date for joining additional parties:

March 31, 2026    Plaintiff(s)
March 31, 2026    Defendants(s)

17

6.2    Final date for amending pleadings:

       <u>March 31, 2026</u>    Plaintiff(s)

       <u>March 31, 2026</u>    Defendants(s)

6.3    All fact discovery commenced in time to be completed by:
   <u>April 30, 2026</u>

6.4    All potentially dispositive motions should be filed by:    <u>May 31, 2026</u>

6.5    Reports from retained experts due:

       from plaintiff(s) by    <u>April 30, 2026</u>

       from defendant(s) by    <u>April 30, 2026</u>

6.6    Supplementations due    <u>May 15, 2026</u>

6.7    All expert discovery commenced in time to be completed by    <u>May 31, 2026</u>

6.8    This case may be appropriate for trial in approximately:

       <u>   </u>  240 Days from the filing of the action in this court

       <u> X </u>  365 Days from the filing of the action in this court

       <u>   </u>  Days from the filing of the action in this court

6.9    Suggested Date for the final Pretrial Conference:

       <u>July 2026 </u>(month/year)

6.10    Trial

       6.10.1  Suggested Date for Trial:

               <u>August 2026</u>    (month/year)

**7.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual(s) have settlement authority.

Plaintiffs:

E.C. and J.N. c/o Barry H. Dyller, Esq.
Name

Dyller & Solomon, LLC

  88 North Franklin Street

  Wilkes Barre, PA 19107
Address

(570) 829 - 4860        Daytime Telephone


 E.C. and J.N. c/o Nicole M. Psaila, Esq.
Name

  Dyller & Solomon, LLC

  88 North Franklin Street

  Wilkes Barre, PA 19107
Address

(570) 829 - 4860        Daytime Telephone



Defendant:

Hanover Area School District c/o Mark Bufalino, Esquire (Solicitor)   570-814-7377
Name

Lisa Eisen, Summit Risk Services 215-443-3516
Title

Sean P. McDonough, Esquire

Dougherty, Leventhal & Price, LLP 459 Wyoming Ave., Kingston, PA 18704
Address

(570)288-1427        Daytime Telephone

## 8.0  Alternative Dispute Resolution ("ADR")

8.1    Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

ADR procedure_____

Date ADR to be commenced_____
Date ADR to be completed_____

8.2    If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

The parties have discussed a potential non-binding mediation to be conducted prior to the commencement of discovery.

8.3    If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

## 9.0    Consent to Jurisdiction by a Magistrate Judge

Indicate whether all parties agree, pursuant to 28 U.S.C. ' 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court: ____ Y   _X_ N.

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:

_____ Scranton/Wilkes-Barre
_____ Harrisburg
_____ Williamsport

## 10.0    Other Matters

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

**11.0    Identification of Counsel**

Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures.   Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy.   Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference.   The Chief Judge may grant or deny such request.

Identify by name, address, and telephone number lead counsel for each party.   Also please indicate ECF User status below.

Dated:                   Barry H. Dyller, Esq., Nicole M. Psaila, Esq.        570-829-4860
                                  Attorney(s) for Plaintiff(s)
                  Yes      ECF User(s)
                  No       Waiver requested (as separate document)
                  No       Fed.R.Civ.P.7.1 (statement filed if necessary)*

Dated:                   Sean P. McDonough, Esquire,                      570-228-1427
                                  Attorneys(s) for Defendant(s)
                  Yes      ECF User(s)
                  No       Waiver requested (as separate document)
                  No       Fed.R.Civ.P.7.1 (statement filed if necessary)*

* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.